IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| FLEET MANAGEMENT LTD., ET AL. | : | NO. 07-279 |

### MEMORANDUM

**Padova, J.**                                                            **January 28, 2008**

_____Currently before the Court is "Defendants' Joint Motion to Strike the Government's Expert Witness; or in the Alternative, to Strike the Government's Third Expert Witness Disclosure and Limit Matthew Jones's Expert Opinions to Those Disclosed Prior to the Taking of Trial Testimony Through Rule 15 Depositions."  For the following reasons, we decline to strike the expert witness, but nevertheless, strike his December 11, 2007 Expert Report and find that his expert opinions in the Government's case-in-chief shall not include expert opinions that there were discharges of oily waste into the ocean on dates other than January 14-15, 2007.

### I.        BACKGROUND

The Defendants in this case are Fleet Management, Ltd. ("Fleet"), the operator of a ship called the Valparaiso Star (the "Ship"); Parag Raj Grewal, the Captain of the Ship; and Yevgen Dyachenko, the Chief Officer of the Ship.  The six-count Indictment charges the three Defendants with crimes associated with the alleged discharge of oil-contaminated bilge water and oil-contaminated sludge into the ocean from the Ship. Among other things, the Indictment specifically charges all three Defendants with conspiring to fail to maintain an accurate Oil Record Book that recorded all discharges of such bilge water and sludge for presentation to the United States Coast Guard.

The Indictment was filed on May 15, 2007.  On May 26, 2007, in response to a Government

motion, we issued an Order pursuant to Fed. R. Crim P. 15(a)(1), allowing the Government to take depositions of three crew members of the Ship (Motorman Thakorbhai Sailor, Second Assistant Engineer Alokesh Dhabal, and Third Assistant Engineer Pooran Singh).  (See 5/26/07 Order-Memorandum.)  The extraordinary circumstances that supported the taking of these depositions were that the crew members were foreign nationals, who were being held in this country because they were material witnesses, but who desired to return to their home countries, where they would be beyond this Court's subpoena power.  (Id.)  Defendants opposed the depositions, arguing that they could not adequately prepare to take trial testimony by Rule 15 deposition just three weeks after the Indictment, particularly in a complex case such as this one.  Accordingly, as a precondition to these depositions, we required the Government to produce an expert disclosure, as well as a Bill of Particulars, detailing the "when and where" of the overboard discharges of waste oil that it alleged Defendants had omitted from the Ship's oil record book.  (5/22/07 Hrg Transcr. at 55-56, 60, 63.)  Thereafter, the Government produced a Bill of Particulars, setting forth twenty-five dates of alleged overboard discharges, and advised Defendants in an expert disclosure that the Government's expert, United States Coast Guard Chief Matthew Jones, would:

> be prepared to provide an opinion regarding the use of a hose connected between the outlet of the vessel's sludge pump to the overboard valve of the boiler to discharge oily wastes overboard, the presence of oil in the ballast/bilge system, the use of the ballast/bilge system to pump the oil-contaminated bilge wells overboard and the lack of oil in the overboard discharge valve for the vessel's boiler and the overboard discharge valves for the vessel's ballast.

(5/23/07 Exp. Discl.)  Following these disclosures, the three material witnesses were deposed in Philadelphia.

Two months later, after the deponents had returned to their home countries, the Government

produced an expert report (the "August 8 Report") in which Jones opined regarding (1) a new method of discharge, i.e., "tricking" the oil content meter of the oily water separator, and (2) two dates of discharge that were not previously disclosed in either the Bill of Particulars or the expert disclosure (November 24, 2006 and December 1, 2006).  Defendants moved to enforce the Bill of Particulars and exclude these new opinions.   We ordered that "the Government, to protect against the potential exclusion of the present Rule 15 deposition testimony of [the] material witnesses [previously deposed], may make arrangements to reconvene the depositions of those witnesses in India," where the parties were traveling for additional Rule 15 depositions, to permit Defendants to question the witnesses regarding the new discharge theory and dates.  (9/26/07 Order.)   Ultimately, the parties took three additional Rule 15 depositions in India (Motorman Gopal Singh, Motorman Suresh Vrayan and Third Assistant Engineer Rakesh Sharma), but the three previously-deposed witnesses were not available and thus, their depositions were not reconvened.[1]

On December 11, 2007, six weeks after the India trip, the Government produced an amended expert report.  This new report (the "December 11 Report") omits any opinion regarding the new method of discharge in the August 8 Report and, according to the Government, no longer includes the two dates that had been included in the August 8 Report, but were not in the Bill of Particulars.[2] At the same time, however, the December 11 Report lists a host of dates that were not in the August

_____

[1]Nevertheless, the Government has moved to admit the deposition testimony of the three Philadelphia deponents at trial, and we intend to grant that motion.

[2]The assertion that the two dates that were in the August 8 Report, but not in the Bill of Particulars, i.e., November 24, 2006 and December 1, 2006, are no longer in the December 11 Report is perplexing, because the December 11 Report includes the date ranges of  November 22-25, 2006, and November 30, 2006 - December 3, 2006.  However, for purposes of this Motion, we will simply accept the Government's assertion at face value.

8 Report, some of which also did not appear in the Bill of Particulars.[3]  In addition, the December 11

Report, for the first time, offers an opinion regarding the relevance of test results on oil samples taken

from the Ship.  Specifically, Jones concludes that there is no relevance to the fact that there was no

detectable oil in the interior overboard discharge of the boiler blowdown valve, and to the fact that

samples of oil taken from the sludge tank and the sludge pump discharge valve did not match.

In light of these changes to the expert opinions, Defendants filed the instant motion to strike

the expert witness or, in the alternative, to limit his expert opinions to those regarding the dates of

January 14-15, 2007,  and to the expertise disclosures prior to December, "which did not disclose that

Matthew Jones was a forensic expert, that he would give expert testimony as a forensic expert, or

what his forensic opinions would be before trial." (Defs.' Mot. at 16.)  For the following reasons, we

decline to strike the expert witness, but will prohibit Jones from expressing expert opinions in the

Government's case-in-chief that there were discharges on dates other than January 14-15, 2007.

Furthermore, we will not permit him to offer his so-called "forensic" opinions as to the oil samples

taken from the Ship in the Government's case-in-chief unless Defendants open the door to such

testimony in opening argument or cross-examination.

## II.    DISCUSSION

In concluding that Jones's testimony should be limited as set forth above, we make two critical

determinations.  First, we find that under the circumstances of this case, the December 11 Report

should be stricken because it broadened the scope of expert testimony at a time when such broadening

was extremely prejudicial to Defendants.  Second, we find that the expert opinions in the August 8

---

[3] When we asked the Government to explain why dates in the December 11 Report were not in the Bill of Particulars, the Government was unable to do so.  (See 1/11/08 Hrg Transcr. at 39.)

Report must be limited to dates of alleged discharge that appeared in the Bill of Particulars and theories of discharge that were disclosed prior to the commencement of Rule 15 depositions. While the Government has implicitly agreed to these limitations on the August 8 opinions, it is also apparent that such limitations are necessary to ensure that Defendants are not prejudiced by the Government's early and unorthodox commencement of Rule 15 depositions so soon after indictment.

### A. **The December 11 Report**

The Rules regarding expert disclosures in a criminal case are set forth in Rule 16 of the Federal Rules of Criminal Procedure.   Under Rule 16(a)(1)(G), the Government, at a defendant's request, is required to give the defendant a written summary of any expert testimony that it intends to use in its case-in-chief.  Fed. R. Crim. P. 16(a)(1)(G).  "It is expected that the parties will make their requests and disclosures in a timely fashion."  United States v. Rhines, 143 Fed. Appx. 478, 482 (3d Cir. 2005) (quoting Fed. R. Crim. P. 16 Advisory Committee Notes).  "The summary provided . . . must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."  Fed. R. Crim. P. 16(a)(1)(G).  Under Rule 16(d)(2), if the Government fails to comply with any part of Rule 16, the court may grant a continuance, prohibit the Government from introducing the non-disclosed evidence, or enter any other order that is just under the circumstances. Fed. R. Crim. P. 16(d)(2).

In reviewing a district court's decision as to what is "just," the Court of Appeals "will consider any harm caused by the government's violation."  United States v. Lopez, 271 F.3d 472, 483 (3d Cir. 2001).  Moreover, it will only reverse a district court's discretionary decision not to take remedial action if the decision resulted in prejudice to defendants.  Id. at 484; United States v.Davis, 397 F.3d 173, 178 (3d Cir. 2005).  "A defendant is prejudiced under Rule 16 . . . when he is unduly surprised

and lacks an adequate opportunity to prepare a defense, or when the violation substantially influences the jury."  United States v. Stevens, 380 F.3d 1021, 1026 (7th Cir. 2004).

In this case, the Government made a timely expert disclosure prior to the commencement of Rule 15 depositions, and subsequently issued the August 8 Report.  At least to the extent that the August 8 Report did not stray from the dates of discharge set forth in the Bill of Particulars and the theories of discharge previously disclosed, and instead limited the expected scope of expert testimony, we find that the production of this expert report did not violate either the letter or spirit of Rule 16. However, the same cannot be said for the Government's subsequent production of the December 11 Report, which greatly expanded the proposed expert testimony, including the addition of numerous new opinions as to dates of discharge.  We find that this belated amendment violates Rule 16's requirement that the Government timely disclose its expert witness's opinions.  Moreover, the amendment came at such a late date that if permitted, it would be extremely prejudicial to Defendants. Thus, we find that the only "just" result is to strike the December 11 Report as Defendants request.

While we recognize that it is unusual to strike an expert report that was produced two months before trial, this is an unusual case, primarily because of the number of Rule 15 depositions taken. All tolled, before the December 11 Report was produced, six Rule 15 depositions of crew members had been taken, and at least five of those deposition transcripts will be read into the record at trial.[4] From the start, we approached these depositions cautiously, acutely aware of the potential for prejudice if Defendants did not have sufficient opportunity to prepare to take trial testimony so soon after their Indictment.  On the other hand, we understood the ongoing dilemma in this case, i.e., that the critical crew member witnesses are foreign nationals, whom the parties cannot subpoena for trial.

---

[4]The Government informs us that Gopal Singh is expected to appear at trial.

6

Accordingly, we endeavored to level the playing field, by requiring the Government, before the depositions began, to be forthright with Defendants regarding the precise charges against them and the expert testimony on which the Government would rely.  The Government, we think, largely complied with our Order, at least until December 11, when it attempted to greatly expand the scope of Jones's testimony with the new Report.

The differences between the August 8 Report and the December 11 Report are substantial. In the August 8 Report, Jones opined that "the bilge/ballast pipes were used as a delivery system to discharge bilge . . . into the ocean" on November 23, 2006 and December 1, 2006, that there were "large bilge waste volume discharges into the ocean" that were accomplished by tricking the oil content meter on December 6-7, 2006 and January 3-4, 2007, and that using a hose, "sludge waste was by-passed from the sludge tank through the boiler blow-down value on the skin or outside hull of the vessel" on January 14-15, 2007.[5]  In contrast, Jones opined in the December 11 Report that there were 25 dates on which discharges occurred.  Specifically, the  December 11 Report  retained the August 8 Report's opinion regarding a discharge on January 14-15, 2007, but also offered new opinions that the "bilge-ballast system was used to discharge oily bilge waste directly into the ocean" on November 22-25, 2006, November 30-December 3, 2006, December 7-9, 2006, December 23-25, 2006, and January 15-23, 2007.

We cannot  permit the Government to so greatly expand the scope of its expert testimony seven months after Indictment, two months before trial, and after trial depositions had been taken of

---

[5]While the Defendants challenged the scope of the August 8 Report insofar as it varied from the Bill of Particulars and the expert disclosure, the fact remains that the report actually narrowed the scope of the potential expert opinion by setting forth just eight dates on which the expert would opine that discharges occurred.

at least five critical crew member witnesses, particularly when it has offered no explanation for why its expert witness developed these new opinions or why the added opinions were not included in the earlier disclosures.  The Government maintains that Defendants could not have been surprised or prejudiced by the altered opinions in the December 11 Report, because the opinions fall "well within" the purview of the May 2007 disclosure and merely "reference[] dates . . . which more closely track the numerous dates listed in the bill of particulars . . . ."  (Gov't Br. at 2-3.)   It further maintains that it would be unfair for the Court to penalize it for producing an incomplete report in August, when it was not even required under the Federal Rules to produce an expert report, and could have merely rested on its broad and general May 2007 disclosure.  We disagree.

When the Government produced the August 8 Report, the message to Defendants was that the Government was more clearly defining the scope of the expert's opinions.  Defendants then proceeded with the Rule 15 depositions in India under the impression that the expert testimony at trial would be no greater than that in the August 8 Report.  While the Government implies that Defendants should be able to simply adjust their defense going forward to defend against the new expert opinions, this is not possible when the trial testimony of critical witnesses has been taken and those witnesses are no longer available.

It is important to note that this is not a case where the exact dates of the alleged offenses can be characterized as inconsequential, such that we can overlook the changes in the expert's opinions regarding dates of discharge.  To the contrary, the charges in this case revolve around allegations that Defendants failed to record discharges of oil on specific dates in an oil record book.  As such, the expert's opinions as to when the alleged unrecorded discharges occurred is information that is essential to Defendants' investigation of the Government's charges and critical to the development

of their defense.  Thus, where, as here, Defendants understood that the expert would opine as to discharges on certain dates, and based on that understanding, developed trial testimony through Rule 15 depositions that cannot be reconvened, it is plainly prejudicial to permit the Government to amend its expert report to change the opinions to address wholly different dates especially when the Government will introduce at least three of the Rule 15 depositions at trial.

In sum, we find that the Government violated both Rule 16 and our May 22, 2007 Order by producing the December 11 Report and that it would be unduly prejudicial to Defendants to permit the Government to introduce the new opinions in that report at trial.[6]  Moreover, we see no viable way to cure that prejudice other than to strike the December 11 Report.  Indeed, it would be futile to grant a continuance when to cure the prejudice, Defendants would have to redepose the Rule 15 witnesses, who are not only in India, but also unlikely to cooperate.[7]  Accordingly, we conclude that the only just resolution is to strike the December 11 Report, and to limit Jones's opinions to the permissible

---

[6]We recognize that, in addition to opining about new dates of discharge, Jones opines in the December 11 Report about the relevance of oil samples taken from the Ship.  Defendants also object to this testimony.  Although we necessarily discard these secondary opinions with the striking of the December 11 Report, the prejudice associated with the late disclosure of these so-called forensics opinions is much less clear than that associated with the new opinions regarding dates of discharge.  However, the Government has stated that the "forensics" opinions were added to the expert report in response to Defendants' arguments at an earlier court hearing that Jones's opinions could not be reconciled with the test results of oil samples from the Ship.  As such, the so-called "forensic" opinions are best characterized as rebuttal expert opinions that we are in no way limiting in this opinion.  Accordingly, the Government may still offer these opinions through Jones either on redirect or rebuttal if, in fact, Defendants open the door to that testimony.

[7]As was demonstrated when the Government attempted to procure the attendance of Sailor, Dhabal and P. Singh for redeposition in India, the witnesses are not necessarily available, even in their home country.  Indeed, the Government explains in its brief that Sailor, Dhabal and P. Singh "refused – through counsel – to appear in India to be deposed," and notes that in the absence of subpoena power over them, the Government is incapable of forcing their depositions.  (Gov't Br. at 11-12.)

opinions in his August 8 Report.

   **B. <u>Dates of Discharge</u>**

   Having explained our striking of the December 11 Report, we now explain our conclusion that the only dates of discharge in the August 8 Report about which Jones may opine are January 14-15, 2007.

   First, it appears that the Government has abandoned all of the August 8 opinions regarding discharges except those concerning January 14-15, 2007. As explained above, the August 8 Report included opinions that discharges occurred on January 14-15, 2007, November 24, 2006, December 1, 2006, December 6-7, 2006, and January 3-4, 2007. However, the Government states in its opposition brief that "the content of [Jones's] testimony has been pared down" and "the oil content meter theory is no longer a tenable topic of [Jones's] direct testimony." (Gov't Br. at 12.) Thus, it has apparently abandoned the opinions concerning December 6-7, 2006, and January 3-4, 2006, which pertained to discharges accomplished by "tricking the oil content meter." Moreover, the Government states outright that the allegations regarding November 24, 2006 and December 1, 2006 have been "discarded." (<u>Id.</u> at 13.) Accordingly, the only expert opinions regarding dates of alleged discharge that remain from the August 8 Report are those pertaining to January 14-15, 2007.

   This is plainly the right result given that the November 24, 2006, and December 1, 2006 dates and the allegations regarding "tricking the oil content meter" were never mentioned in the Bill of Particulars and trial had essentially already begun with the taking of the Philadelphia Rule 15 depositions when the August 8 Report was produced. As the Court of Appeals for the Third Circuit has stated, "[a] bill of particulars is a 'formal, detailed statement of the claims or charges brought by a plaintiff or a prosecutor.'" <u>United States v. Urban</u>, 404 F.3d 754, 771 (3d Cir. 2005) (quoting

Black's Law Dictionary 177 (8th ed. 2004)).  "The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him to [permit him to] adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense."  United States v. Adonizzio, 451 F.2d 49, 63-64 (3d Cir. 1972) (quoting United States v. Tucker, 262 F. Supp. 305, 308 (S.D.N.Y. 1966)).  Thus, "[a] bill of particulars, like the indictment, is designed to define and limit the government's case."  United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985).

"As with the indictment, there can be no variance between the notice given in a bill of particulars and the evidence at trial."  Id. (citing United States v. Neff, 212 F.2d 297, 309 (3d Cir. 1954)).  "[A] variance between the proof and the bill of particulars is not grounds for [relief] unless the [defendant] is prejudiced."  United States v. Francisco, 575 F.2d 815, 818 (10th Cir. 1978); United States v. Haskins, 345 F.2d 111, 114 (6th Cir. 1965) (same); United States v. Ramsey, 53 F.3d 341, 1995 WL 241488, *10 (9th Cir. 1995) (unpublished decision) ("When faced with a claim of variance between the pleadings and proof at trial in a conspiracy case . . . we must determine whether any variance was prejudicial.").  However, "[p]rejudice is normally considered to be present if . . . the accused was so surprised by the proof that he was unable to prepare his defense adequately."  Francisco, 575 F.2d at 819.

Here, we ordered the Government to produce a Bill of Particulars, precisely because we wanted to negate any prejudice that might inure to Defendants by virtue of their having to take part in Rule 15 depositions in this complex case just three weeks after the Indictment was filed.  Indeed, while the Indictment referenced a two-month period in which the Ship allegedly discharged waste into the ocean using the Ship's bilge/ballast overboard piping system (November 23, 2006 - January 23,

11

2006), we concluded that it was unreasonable to require Defendants, so soon after being indicted, to essentially start trial with Rule 15 depositions without understanding precisely what the Government's charges were, including the precise dates during this two month period on which the discharges that were not recorded allegedly occurred.  By requiring the Government to provide specific dates, we enabled the Defendants to focus their expedited preparations in the case on the Ship's records and other evidence pertaining to those particular dates.

That the Government thereafter produced the August 8 Report that attempted to introduce expert testimony on two additional dates of discharge and a new method of discharge plainly re-introduced the very threat of prejudice that we had endeavored to abate by requiring the Bill of Particulars and expert disclosures at the outset.  While we offered the Government the opportunity to cure this prejudice by making arrangements to reconvene the three already-completed depositions, the Government was unable to do so.  Defendants therefore lost any opportunity to question these witnesses about the "tricking the oil content meter" theory or the two dates that the Bill of Particulars did not mention.

Under these circumstances, we can come to no conclusion other than that Defendants were "so surprised by the proof that [they were] unable to prepare [their] defense adequately." Francisco, 575 F.2d at 819.  While the Government maintains that it has always been free to introduce expert testimony that varies from the dates in Bill of Particulars, because the Bill of Particulars dates were qualified with "on or about" language, we find that argument unpersuasive in light of our plain order in May of 2007 that the Government was to provide specific dates as a precondition to taking Rule 15 depositions.  Thus, we conclude that the only dates of discharge about which Jones may offer an expert opinion are January 14-15, 2007.

**III.   CONCLUSION**

It is important to note that in spite of our limitations on Matthew Jones's expert testimony in this case, the Government remains free to offer fact testimony about discharges on dates other than January 14-15, 2007.  Moreover, we note that the crime of failing to maintain an accurate oil record book does not depend on the number of inaccuracies in the record book; rather, proof of a single unrecorded overboard discharge is sufficient to prove the crime.  Accordingly, we are confident that our granting of Defendants' motion as set forth above does not substantially hamper the Government in its prosecution.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| FLEET MANAGEMENT LTD., ET AL. | : | NO. 07-279 |

**ORDER**

**AND NOW,** this 28th day of January, 2008, upon consideration of "Defendants' Joint Motion to Strike the Government's Expert Witness; or in the Alternative, to Strike the Government's Third Expert Witness Disclosure and Limit Matthew Jones's Expert Opinions to Those Disclosed Prior to the Taking of Trial Testimony Through Rule 15 Depositions" (Docket No. 143), and all documents submitted in connection therewith, and after a hearing on the Motion on January 11, 2008, **IT IS HEREBY ORDERED** that the Motion is **GRANTED** as follows: Matthew Jones's December 11, 2007 Expert Report is **STRICKEN**, and Jones's expert opinions in the Government's case-in-chief shall not include expert opinions that there were discharges of oily waste into the ocean on dates other than January 14-15, 2007.

BY THE COURT:


/s/ John R. Padova, J.
John R. Padova, J.