IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| FLEET MANAGEMENT LTD., ET AL. | : | NO. 07-279 |

### ORDER-MEMORANDUM

     **AND NOW**, this 24th day of April, 2008, upon consideration of the Government's Motion to Quash Subpoena Directed to United State Coast Guard Captain Michael Karr (Docket No. 247), and all concomitant briefing, **IT IS HEREBY ORDERED** that the Motion is **DENIED**.

The subpoena at issue in the Motion to Quash was issued in connection with ongoing proceedings concerning several motions that Defendants have filed seeking to suppress statements given by crew members of the Valparaiso Star on January 25, 2007, during a Coast Guard Port State Control Inspection. In those motions, Defendants have argued, among other things, that certain crew member statements should be suppressed pursuant to United States v. Ramos, 27 F.3d 65 (3d Cir. 1994), because Coast Guard Chief Warrant Officer John Nay acted in bad faith in destroying his notes of his interviews with the crew members. To establish bad faith, Defendants seek to establish that Coast Guard policy required those individuals participating in the January 25, 2007 Port State Control Inspection to both take and retain complete notes of their interviews. In support of this argument, Defendants have relied on a January 20, 2006 policy memorandum authored by Captain Michael Karr. They interpret that memorandum to state that Coast Guard policies regarding the taking and retention of notes that are set forth in Volume V of the Coast Guard's Marine Safety Manual ("Volume V") are applicable in Port State Control Inspections involving suspected criminal

conduct.[1]

Upon learning during hearings on Defendants' motions to suppress that Defendants would be arguing that Captain Karr's policy memorandum established that Volume V's note-taking and retention procedures applied in this case, the Government moved to reopen the record to permit it to introduce evidence regarding Coast Guard policies for note-taking and retention. We granted that motion, and the Government now seeks to offer the testimony of Coast Guard Captain David Lersch, Chief of the Prevention Division for the Fifth Coast Guard District, on those topics. Defendants, however, seek the testimony of Captain Karr, the Chief of the Office of Vessel Activities at U.S. Coast Guard Headquarters, who authored the January 20, 2006 policy memorandum on which they rely. They have therefore issued a subpoena to the Coast Guard, requesting that Captain Karr testify at the reopened evidentiary hearing.

The Coast Guard, however, has declined to produce Captain Karr, asserting that his testimony is unnecessary, because Captain Lersch is "fully qualified, capable and authorized to testify as to the applicable Coast Guard policy" and that it would be a "significant waste of Government resources

---

[1]The policy memorandum, which by its terms concerns "Guidance for the Enforcement of MARPOL Annex I during Port State Control Examinations," states in relevant part:

> When a [Port State Control Officer] suspects that a civil or criminal violation has taken place, it is imperative that a through investigation of potential violations takes place. A prompt and coordinated investigation is crucial. References (g) and (h) contain guidance and procedures for Sector Commanders that if closely followed, will ensure all enforcement options are protected when conducting an investigation.

(See Ex. F to Defs.' Resp. to Gov't Mot. to Quash.) Reference (h) is the Marine Safety Manual, Volume V, a manual that contains specific procedures for note-taking and note retention. (Id.) The Government has maintained that the Marine Safety Manual was not applicable to CWO Nay and the other members of the Coast Guard during the Port State Control Inspection at issue here.

to require a Headquarters level policy program coordinator to testify in courts around the nation when there are fully competent and authorized Coast Guard officials stationed in the various Districts and Sectors who are available to do so." (4/8/08 Coast Guard Ltr. to Defense Counsel ("4/8/08 Ltr."), Ex. B to Gov't Mot. to Quash.)  Thereafter, the Government filed the instant Motion to Quash the Captain Karr subpoena.

A federal agency has the power to promulgate regulations that grant it discretion to determine whether to comply with subpoenas requesting testimony of its employees.  See United States ex rel Touhy v. Ragen, 340 U.S. 462 (1952); 5 U.S.C. § 301 ("The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property.").  Here, the Department of Homeland Security, of which the Coast Guard is a part, has promulgated regulations governing its employees' testimony.  See 6 C.F.R. § 5.41 et seq.  Those regulations provide that the Department, in deciding whether to comply with a request for testimony, shall consider, "among any other pertinent considerations," the following:

> (1) Whether such compliance would be unduly burdensome or otherwise inappropriate under the applicable rules of discovery or the rules of procedure governing the case or matter in which the demand arose;
>
> (2) Whether compliance is appropriate under the relevant substantive law concerning privilege or disclosure of information;
>
> (3) The public interest;
>
> (4) The need to conserve the time of Department employees for the conduct of official business;
>
> (5) The need to avoid spending the time and money of the United States for private purposes;

      (6) The need to maintain impartiality between private litigants in cases where a substantial government interest is not implicated;

      (7) Whether compliance would have an adverse effect on performance by the Department of its mission and duties; and

      (8) The need to avoid involving the Department in controversial issues not related to its mission.

6 C.F.R. § 5.48(a). By articulating these factors as well as other considerations set forth in the regulations, the agency "has limited its own discretion and [is] not free to make a decision based exclusively on factors not contained in the regulations." Davis Enterprises v. United States Environmental Protection Agency, 877 F.2d 1181, 1186 (3d Cir. 1989). An agency action in refusing to comply with a subpoena to testify is therefore reviewable, and the question upon review is whether the agency decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Id.; 5 U.S.C. § 706(2)(A). "[W]here the regulations which provide the governing law vest the agency with 'rather broad discretion,' our scope of review is 'severely limited.'" Davis, 127 F.2d at 1186 (quoting Chong v. Director, United States Information Agency, 821 F.2d 171, 176 (3d Cir. 1987)). "We are only free to determine whether the agency followed its own guidelines or committed a clear error of judgment." Id. (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)).

      The Government argues that the subpoena of Captain Karr should be quashed because "the Coast Guard determined that testimony from a headquarters level official (Captain Karr) as to a policy [about] which a regional Coast Guard representative (Captain Lersch) is fully capable of providing . . . testimony is unduly burdensome and cumulative." (Gov't Mot. to Quash at 4.) It further argues that "such a determination is clearly within the scope of the federal regulations and is an appropriate

exercise of the Coast Guard's discretion." (Id.) Under the circumstances of this case, we disagree.

As explained above, in United States v. Ramos, the United States Court of Appeals for the Third Circuit held that government agents must preserve their rough notes of interviews with prospective trial witnesses so that a trial court can determine whether the notes should be made available to the defendants. According to the Government, in spite of this judicial directive, the Coast Guard has no policy requiring members of the Coast Guard who are participating in Port State Control Inspections that involve investigations into possible criminal conduct to take and/or retain notes. Relying in part on this assertion, the Government takes that position that CWO Nay did not act in bad faith when he destroyed his notes of interviews in which he participated during the January 25, 2007 investigation into potentially criminal activity on the Valparaiso Star. Defendants, on the other hand, seek to establish that the Coast Guard, in fact, has a policy that complies with Ramos, which CWO Nay should have been aware of and followed, and it finds evidence of that policy in the policy memorandum authored by Captain Karr. Given this dispute, we are asked to decide whether CWO Nay's failure to comply with Ramos's mandate to preserve his notes was the result of an overall failure of the Coast Guard to create a Ramos-compliant policy, or the result of CWO Nay's failure to follow a policy that existed.

With this important issue before us, we find that it is an abuse of the Coast Guard's discretion to refuse to produce Captain Karr. While the Government maintains that Captain Lersch is fully capable of testifying as to the matters about which Defendants seek to inquire, the primary policy memorandum on which Defendants base their arguments is a memorandum authored by Captain Karr, who, as the author, is uniquely qualified to testify regarding the contents and meaning of the memorandum. Furthermore, we cannot find the Coast Guard's generalized assertion that it would be

"overly burdensome" to produce Captain Karr to be a valid exercise of its discretion when it does not elaborate further on the purported burden. Rather, to establish burden, the Coast Guard appears to rely on the mere fact that Captain Karr is a "headquarters level official" whereas Captain Lersch is an official at the district level. However, both potential deponents apparently have the rank of Captain, either will have to travel from out-of-state to testify (see Gov't Mot. at 1-2), and even the Coast Guard concedes that Captain Karr is not of the same stature as other "high government officials" for whom subpoenas have been quashed in other cases. (4/8/08 Ltr., Ex. B. (citing In re United States (Holder), 197 F.3d 310 (8th Cir. 1999) (involving attorney general and deputy attorney general); In re United States (Faloon), 985 F.2d 510 (11th Cir. 1993) (involving Commissioner of the Food and Drug Administration)). Finally, we are likewise unpersuaded by the assertion that Captain Karr's testimony would be "cumulative" of Captain Lersch's testimony, when Captain Lersch is the witness of the Government's choosing in a hotly-contested dispute, Captain Karr wrote the policy memorandum at issue and, in any event, it would appear that one could just as easily assert that it is Captain Lersch's testimony that would be cumulative of Captain Karr's.

We are cognizant of the fact that our review of agency decisions is highly circumscribed under the abuse of discretion standard. However, where, as here, it is the conduct of a member of the Coast Guard which is at issue and which has given rise to a serious legal issue regarding whether statements of key Government witnesses in this criminal case should be suppressed, we can reach no conclusion other than that it is an abuse of discretion for the Coast Guard to refuse to produce the witness that Defendants have identified as critical to their defense. Far from being a waste of Government resources, the Coast Guard's obligation to produce Captain Karr is plainly the necessary and proper

result of CWO Nay's conduct in destroying his notes and the Government's intention to introduce crew member statements which CWO Nay's notes admittedly covered.

                                                        BY THE COURT:


                                           /s/ John R. Padova, J.
                                          John R. Padova, J.