IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :        CRIMINAL ACTION
                                :
        v.                      :
                                :
FLEET MANAGEMENT, LTD., et al.  :        NO. 07-279

MEMORANDUM

Bartle, C.J.                                    August 20, 2009

        Before the court are the motion of defendant Yevgen
Dyachenko to suppress certain notepads and the motions of
defendants Fleet Management, Ltd. ("Fleet") and Dyachenko for
severance.

        On May 15, 2007, a federal grand jury returned a six-
count indictment against Fleet, a company headquartered in Hong
Kong, and its employees, Parag Raj Grewal and Dyachenko.  The
essence of the charges is that defendants engaged in an illegal
conspiracy to dump into the ocean oily wastes from onboard a
large cargo ship, the Valparaiso Star.  The indictment further
alleges that defendants covered up that discharge by manipulating
ship logs.  Count One charges all defendants with conspiracy to
present a false oil record book to the Coast Guard and to
obstruct justice, in violation of 21 U.S.C. § 371.  In Counts Two
and Three, Fleet and Dyachenko are charged with failing to
maintain an accurate oil record book, in violation of 33 U.S.C.
§ 1908(a), 18 U.S.C. § 2, and 33 C.F.R. § 151.25, and false
statements, in violation of 18 U.S.C. § 1001.  Counts Four and

Six charge Fleet and Grewal, respectively, each with one count of obstruction of justice, in violation of 18 U.S.C. §§ 1505, 1515(b), while Count Five charges Fleet and Grewal together with a second count of obstruction of justice.

I.

We first address the motion of Dyachenko to suppress two pocket-size spiral notepads that were seized from him by Coast Guard personnel aboard the <u>Valparaiso Star</u> on January 24, 2007.

Dyachenko's initial argument is that the warrantless seizure of his notepads violated the Fourth Amendment to the United States Constitution.  The government argues that the seizure was valid pursuant to 14 U.S.C. § 89(a), which permits the Coast Guard to make warrantless searches and seizures onboard a ship for "the prevention, detection, and suppression of violations of laws of the United States."[1]  Searches conducted pursuant to that statutory authority require only a "reasonable suspicion of criminal activity" to survive Fourth Amendment scrutiny.  <u>United States v. Varlack Ventures, Inc.</u>, 149 F.3d 212, 216-17 (3d Cir. 1998).[2]  The reasonable suspicion, however, "must

---

1.  This court has already ruled that "[t]he Coast Guard had the authority to seize [Dyachenko's notepads] pursuant to 14 U.S.C. § 89(a)."  Memorandum and Order of May 7, 2008, Doc. No. 261, at 20 n.16.  At the time, however, the issue had not been briefed by the parties.  After full briefing, we now reach the same conclusion.

2.  The Supreme Court has ruled that customs agents, who are authorized by a similar statute to conduct searches of vessels in
(continued...)

be based on specific articulable facts, together with rational
inferences drawn from those facts ...." Id. at 217 (quoting
United States v. Roy, 869 F.2d 1427, 1430 (11th Cir. 1989).

During a series of evidentiary hearings held in early
2008, Marine Science Technician Chief Matthew Jones, an
experienced Coast Guard officer, testified that he led the
investigation onboard the Valparaiso Star on January 24, 2007.
He stated that the Coast Guard boarded the ship only after
receiving information from a former crew member, Motorman Gopal
Singh, that he had been fired recently for refusing to
participate in the illegal dumping of large quantities of the
ship's oily waste at open sea.  He further testified that shortly
after boarding, he and other Coast Guard personnel uncovered
evidence which he believed corroborated the whistleblower's
claim.  This included the presence of an unusual hose beneath the
deck plates in the engine room, discrepancies between the ship's

---

2.(...continued)
order to enforce the customs laws, may inspect a "ship's
documents and papers" even without a reasonable suspicion of
criminal activity.  The government argues that the Coast Guard
had a comparable power to seize Dyachenko's notepads without
suspicion.  We do not reach that question, which would involve a
determination of whether the notepads are among "the ship's
documents and papers," because we conclude below that the Coast
Guard did have a reasonable suspicion of criminal activity.

"Oil Record Book"[3] and the daily tank sounding log,[4] and the presence of oil in atypical places aboard the vessel.

Armed with that knowledge and the information provided by the whistleblower, Jones and other Coast Guard personnel interviewed the engine room staff, including Dyachenko, regarding the questionable activity.  Jones testified that during the interview, and in response to questions about illegal activity, Dyachenko displayed a notepad that had been on his person. According to the investigative report created that same day, Dyachenko stated that the notepad contained sounding logs "for his knowledge on what needs to be done in the engine room." Nonetheless, he refused to hand over the notepad to the investigators at that time.  Dyachenko ended the interview by stating that he wished to disclose "the truth" but was concerned that the investigators would write it down.

Jones responded by seeking the aid of the Captain, defendant Grewal.  He informed Grewal that he had authority to seize the notepad and asked for Grewal's help in obtaining it. Dyachenko produced both that notepad and another for Grewal, who immediately turned them over to the Coast Guard.  Both notepads contain detailed technical information relating to maintenance of the engine room and little if any personal information.

---

3.  The Oil Record Book was required by law to contain every transfer of the Valparaiso Star's oily wastes, including internal transfers and transfers into the sea.

4.  A "sounding" is a measurement of the fluid level in a given tank or compartment.

-4-

We conclude that by the time Dyachenko displayed the notepad to the investigators and stated that it contained information related to maintenance of the engine room, the Coast Guard had a reasonable suspicion of criminal activity and was authorized to seize the notebook under § 89(a).[5]  Consequently, we will deny the motion of Dyachenko insofar as it requests suppression of the notebooks under the Fourth Amendment.[6]

In the alternative, Dyachenko moves to exclude the notepads, arguing that:  (1) the highly technical contents of the notepads cannot be authenticated under Rule 901 in the absence of the government's expert, whose exclusion was recently upheld by the Court of Appeals; (2) the writings contained in the notepads constitute inadmissible hearsay under Rule 801; and (3) the notepads are unduly prejudicial to Dyachenko and will needlessly confuse the jury in violation of Rule 403.

Rule 901 of the Federal Rules of Evidence, which governs authentications, places only a "slight" burden on the

---

5.  We further note that the "seizure" in issue was minimally intrusive and reasonable under the circumstances.  The Coast Guard personnel did not frisk Dyachenko nor did they search his personal quarters or belongings.  They sought to obtain the notepads only after Dyachenko revealed their existence and express relevance to the inquiry at hand.

6.  Defendants contend that a holding in the government's favor here requires us to revisit our earlier rulings in the government's favor which were predicated upon the finding that the investigation at issue was technically a civil inspection. As we noted at the time, however, the Coast Guard here undertook "a routine <u>civil</u> inspection that, in this case, included specific inquiries into the allegations of waste oil discharge." Memorandum of May 7, 2008, Doc. No. 261 at 13 (emphasis added).

proponent of evidence which is easily met in this case with
respect to the notepads.  <u>Link v. Mercedes-Benz of N.A., Inc.</u>,
788 F.2d 918, 927 (3d Cir. 1986).  Here, the government has
adduced ample evidence that the notepads were indeed authored by
Dyachenko and contained information related to maintenance of the
engine room.  Although the entries therein are not dated, the
government has shown that in many circumstances the data can be
linked to specific dates by simple cross-referencing with the
contents of other ship logs.  It currently appears that the
necessary comparisons can be conducted and presented to the jury
by a lay witness.  We will not exclude the notepads under Rule
901 at this time.

We also conclude that the contents of the notepads are
not inadmissible hearsay.  The writings are being offered against
Dyachenko by the government and are Dyachenko's own statements.
Under Rule 801(d)(2) they constitute "statements by a party-
opponent" and thus are not hearsay.  Likewise, Dyachenko's
arguments that the notepads should be excluded under Rule 403
because they present a danger of "unfair prejudice" or "confusion
of issues" are without merit.

Finally, Dyachenko notes that the government conducted
depositions of certain foreign witnesses, pursuant to Rule 15 of
the Federal Rules of Criminal Procedure, to preserve their
testimony in the event that they would not or could not appear
for trial.  The government did not question these witnesses about
the notepads.  Now that a final trial date has been set, however,

-6-

the government has expressed an intent to present live testimony from at least one of these witnesses, Gopal Singh.  Dyachenko contends that if Singh testifies, the government should be precluded from questioning him as to the notepads.  He cites no authority for the proposition that the government may not question a witness at trial about a certain topic simply because those questions were not asked during a provisional Rule 15 deposition.  We will not preclude questions related to the notepads on this basis.

## II.

Defendants Fleet and Dyachenko have also moved for separate trials.  Rule 14 of the Federal Rules of Criminal Procedure permits severance where one defendant would experience "clear and substantial" prejudice from the introduction of evidence against a co-defendant.  Fed. R. Crim. P. 14. Defendants bear the burden of establishing prejudice.  <u>United States v. Eufrasio</u>, 935 F.2d 553, 568 (3d Cir. 1991).  "Prejudice should not be found in a joint trial just because all evidence adduced is not germane to all counts against each defendant" or because some evidence is "more damaging to one defendant than others."  <u>Id.</u>

Dyachenko argues that certain hearsay statements made by Second Engineer Akolesh Dhabal and other Fleet employees are admissible, if at all, only against Fleet and not against him. He contends that introducing these statements generally at a joint trial, even with a limiting instruction, would prejudice

-7-

him.  He further asserts that introduction of certain statements
made to the government by his co-defendant, Grewal, implicate the
rule of <u>Bruton v. United States</u>, 391 U.S. 123 (1968).  Lastly, he
asserts that his defense would be compromised by the introduction
of evidence of a conspiracy to obstruct justice between Fleet and
Grewal, a crime with which he, Dyachenko, is not charged.

We will not rule at this time on the admissibility of
each of the hearsay statements to which Dyachenko objects.[7]
Nonetheless, even if some such statements ultimately are deemed
inadmissible against Dyachenko, we conclude that any resulting
prejudice can be minimized through the use of timely and
appropriate limiting instructions.  Dyachenko simply has not
demonstrated that the admission of particular statements will
result in "clear and substantial prejudice."  Fed. R. Crim. P.
14.  As such, Dyachenko is not entitled to severance on this
ground.

Dyachenko also argues that certain statements made by
Grewal to Coast Guard personnel regarding Dyachenko's
responsibilities and conduct aboard the <u>Valparaiso Star</u> implicate
the rule of <u>Bruton v. United States</u>, which prohibits the
introduction at a joint trial of "powerfully incriminating"
statements made by one co-defendant against another.  391 U.S.
123, 135-36 (1968).  Statements that become incriminating "only

---

7.  We note that the government has advanced arguments for the
admissibility of said statements which are, at a minimum, non-
frivolous.

-8-

when linked with evidence introduced later at trial" do not
implicate Bruton's "narrow exception" to the general rule that
limiting instructions can cure any prejudice associated with the
introduction at a joint trial of evidence which is technically
admissible against only one defendant.  Richardson v. Marsh, 481
U.S. 200, 207-08 (1987).  In other words, only "facially
incriminating" statements merit separate trials or exclusion
under Bruton.  Id.

     The statements at issue are Grewal's assertions that:
(1) Dyachenko bore primary responsibility for alerting Grewal as
to when waste needed to be unloaded at an appropriate port
facility, and (2) Dyachenko had been reprimanded for pumping oil
into a center fuel tank on the Valparaiso Star without Grewal's
approval.  At this stage, we cannot determine whether these
statements "facially" or "powerfully" incriminate Dyachenko with
respect to the illegal dumping alleged in the indictment.
Bruton, 391 U.S. at 135-36; Richardson, 481 U.S. at 207.  Any
decision will have to await the trial.  Should a Bruton problem
exist, the court can certainly exclude evidence at that time.
Accordingly, we will not grant separate trials and at this stage
will not exclude the statements under Bruton.

     Finally, we will not sever Dyachenko's trial from that
of Fleet and Grewal simply because the latter two defendants are
charged with obstruction of justice while Dyachenko is not.  We
are confident that the jury will be capable of distinguishing
between the various defendants, their roles in the alleged

-9-

conspiracy, and the evidence properly against each of them.   See,
e.g., United States v. Swift, 809 F.2d 320, 322-23 (6th Cir.
1987).

In addition, Fleet has moved to sever its trial from
that of Dyachenko.  As above, the burden is on Fleet to show
"clear and substantial prejudice" from a joint trial.  Fed. R.
Crim. P. 14.  Fleet argues that it will be prejudiced by the
admission of Dyachenko's notepads, which it contends are
admissible, if at all, against Dyachenko only.  This court has
already concluded, however, that Dyachenko's statements,
including his notepads, are not inadmissible against Fleet on
hearsay grounds because they constitute admissions of Fleet
pursuant to Rule 801(d)(2)(D) of the Federal Rules of Evidence.
Order of Jan. 16, 2008, Doc. No. 184.

Fleet offers an alternative basis on which to preclude
the use of Dyachenko's statements against it.  On September 26,
2007, the court ordered the government to provide Fleet on or
before October 3, 2007 with "a list of witnesses whose statements
the government intends to introduce at trial as statements of
Fleet ...."  Order of Sept. 26, 2007, Doc. No. 101.  Fleet now
submits that the government should be precluded from utilizing
the notepads against Fleet at trial because the government failed
to reference them on the list it timely provided.  The government
included Dyachenko's name on the list in question.  This is
plainly all that was required.  Moreover, the existence of the

notepads has been well known to every party for some time.  We will deny Fleet's request to sever on this basis.

       Fleet offers no other basis on which to conclude that it will suffer "clear and substantial prejudice" if it is tried jointly with Dyachenko.  Accordingly, we will deny the motion of Fleet to sever.